166 S.E.2d 150 (1969)
E. W. TAYLOR et al.
v.
The BOARD OF EDUCATION OF the COUNTY OF CABELL, a corporation.
No. 12733.
Supreme Court of Appeals of West Virginia.
Submitted October 1, 1968.
Decided March 11, 1969.
*151 Baer, Napier & Hamlin, W. Robert Hamlin, Huntington, for appellant.
Dodrill & Dodrill, Huntington, Eagle & Eagle, Hinton, for appellees.
HAYMOND, President:
In this civil action instituted in the Circuit Court of Cabell County June 19, 1964, the plaintiffs, E. W. Taylor, a retired supervising school principal, E. A. Hyldoft, Irvin L. Siebert, Agnes Patterson, Blanche H. Dodrill and Carrie L. Gordon, retired school teachers of Cabell County, seek to recover certain pension or retirement benefits which they assert are due and owing to them by the defendant, The Board of Education of the County of Cabell, a corporation. Upon the complaint, in which the plaintiffs allege that they are members of the teachers retirement system of this State, are retired and have received benefits from that retirement system, and are entitled to receive retirement allotments in specified amounts from the defendant from funds realized from duly authorized levies by the defendant for the years 1960 to 1964, inclusive, and the answer of the defendant, in which it denied any liability for the payments claimed by the plaintiffs, the Circuit Court of Cabell County, after a pretrial conference on September 25, 1964, at which it was agreed by the parties that the court should decide the matters of law upon the pleadings and render judgment accordingly, held that the defendant was under an implied contractual obligation to make the pension payments claimed by the plaintiffs and filed an opinion to that effect on June 11, 1965.
The parties were unable to agree as to the amount to which each of the plaintiffs was entitled, and by order dated March 4, 1966 the circuit court referred the matters in question to a special commissioner for the purpose of taking evidence and making recommendations as to certain stated requirements. These requirements, being five in number, were that the commissioner should determine the formula in effect for the computation of county pension payments to retiring employees of the defendant upon the retirement dates of each of the plaintiffs, the amount the defendant was obligated to pay monthly as a supplemental pension beginning on such retirement dates, how much was paid by the defendant to the plaintiffs as supplemental pension payments after their retirement dates, what amounts the plaintiffs are entitled to recover from the defendant, and the date from which the plaintiffs are entitled to recover in this action.
At the hearings conducted by the commissioner in June 1966 the plaintiffs, E. W. Taylor, Blanche H. Dodrill and Irvin L. Siebert, testified concerning the supplemental pension plan established by the defendant sometime prior to July 25, 1949 and in effect at the time of the institution of this action, and R. F. Brooks, Assistant County Superintendent of Cabell County Schools, testified in behalf of the defendant concerning the supplemental pension plan and the amounts to be paid to the persons entitled to benefits under the plan and the change made in the plan after July 1, 1959. Upon the testimony of the witnesses and certain exhibits the commissioner reported, among other matters, that the formula in effect when the plaintiffs retired or were eligible to retirement provided as base pay benefits for the plaintiff, E. W. Taylor, as of the date of his retirement on July 1, 1955, a monthly base pay from the State of $42.35, excluding any State increases, and a monthly payment from the supplemental pension plan of $47.65, to make his total retirement pay on that basis $90.00 per month; for the plaintiff, E. A. Hyldoft, as of the date of his retirement on June 1, 1958, a monthly base pay from the State of $7.50, excluding any State increases, and a monthly payment from the supplemental pension plan of $52.50, to make his total retirement pay on that basis $60.00 per month; for the plaintiff, Irvin L. Siebert, as of the date of his retirement on June 1, 1955, a monthly base pay from the State *152 of $44.35, excluding any State increases, and a monthly payment from the supplemental pension plan of $15.65, to make his total retirement pay on that basis $60.00 per month; for the plaintiff, Agnes Patterson, who was eligible to retire prior to July 1, 1959 but who actually retired February 1, 1961, as of the date of her retirement on February 1, 1961, a monthly base pay from the State of $35.03, excluding any State increases, and a monthly payment from the supplemental pension plan of $24.97, to make her total retirement pay on that basis $60.00 per month; for the plaintiff, Blanche H. Dodrill, as of the date of her retirement on April 1, 1956, a monthly base pay from the State of $30.01, excluding any State increases, and a monthly payment from the supplemental pension plan of $29.99, to make her total retirement pay on that basis $60.00 per month; and for the plaintiff, Carrie L. Gordon, as of the date of her retirement on June 1, 1957, a monthly base pay from the State of $46.79, excluding any State increases, and a monthly payment from the supplemental pension plan of $13.21, to make her total retirement pay on that basis $60.00 per month; and that the plaintiff, E. W. Taylor, was entitled to recover $2287.20; the plaintiff, E. A. Hyldoft, $2174.40; the plaintiff, Irvin L. Siebert, $751.20; the plaintiff, Agnes Patterson, $724.13; the plaintiff, Blanche H. Dodrill, $1439.49; and the plaintiff, Carrie L. Gordon, $940.33.
By its judgment rendered February 17, 1967, the circuit court overruled the exceptions by the defendant to the report of the special commissioner, confirmed the report and rendered judgment in favor of each of the plaintiffs against the defendant for the foregoing amounts. The amounts for which judgment was rendered for each plaintiff, except the plaintiffs Taylor, Hyldoft and Siebert, were computed from the date of the retirement of each to June 30, 1963 less any payments previously made which, as to the plaintiffs Dodrill and Gordon, were $1169.64 and $24.00, respectively. As to the plaintiffs Taylor, Hyldoft and Siebert, the payments were computed for a period of forty-eight months from July 1, 1959 to June 30, 1963, and each of them has been paid the allowance to which he was entitled prior to July 1, 1959.
By its final judgment rendered May 9, 1967, the circuit court overruled the motion of the defendant to grant it a new trial; and from that judgment this Court granted this appeal upon the application of the defendant.
The State Teachers' Retirement System was established in 1941 by the Legislature of West Virginia by Chapter 18, Article 7A, Code, 1931, as amended, Section 2 of which article contains this language:
"Nothing in this article shall be construed to preclude any employer from providing retirement benefits to retired teachers not eligible to benefits under this article; nor shall it be construed to preclude any employer from supplementing retirement benefits to be received by any of its employees under this article.
"No such benefits, however, shall be paid to a present teacher who elects not to become a member of the teachers' retirement system."
Pursuant to the permission provided by the foregoing section of the statute the present supplemental pension or retirement plan has been created and maintained by The Board of Education of the County of Cabell.
The record does not contain any copy of the by-laws or rules and regulations which apply to and govern the supplemental pension plan of the defendant and does not disclose the requirements and qualifications to entitle retired teachers subject to the plan to participate and receive pension or retirement benefits. Though the record does not disclose the ages of all the plaintiffs it does show that each of them has served as a teacher or a supervising principal for more than thirty years and the eligibility of each of the *153 plaintiffs for benefits under the supplemental pension plan is not questioned or challenged in this proceeding. The controlling question is not that the plaintiffs are not entitled to a pension but the proper formula by which the amount of their pension may be determined and paid.
As previously indicated from 1949 until July 1, 1959, the formula under which the supplemental pension plan was operated was that any retired teacher would receive from the plan the difference between the monthly base pay which he received from the State Teachers' Retirement Fund, excluding increases from the State Retirement System in 1953 and 1957, and $60.00 per month for a retired teacher and $90.00 per month for a retired supervising principal. Sometime after July 1, 1959 but effective from that date, the defendant changed the formula by basing the retirement benefits of all teachers upon Option A of the State Teachers' Retirement System which provided for the highest retirement benefits. Under the new formula effective July 1, 1959, the payment of benefits from the supplemental pension or retirement fund to which a retired teacher or supervising principal is entitled, regardless of the option under which the teacher or supervising principal had retired, would be completely discontinued or greatly reduced in amount. It is the new formula, in effect since July 1, 1959, that has resulted in this litigation. The plaintiffs challenge the validity of the new formula and insist that it does not apply to them but that the amount of their monthly pension or retirement benefits is governed and should be determined by the formula in effect before July 1, 1959.
By its several assignments of error the defendant contends that the plaintiffs have no vested right under the supplemental pension or retirement plan and that such plan is subject to termination or alteration at any time at the will of the defendant. On the contrary the plaintiffs, though conceding that the plan may be abolished by the defendant at its will and pleasure, contend that upon their compliance with the requirements of the plan and their retirement under it they have a vested right in the pension or retirement benefits that had accrued at the time of their retirement or when they became eligible for such benefits and that such right continues as long as the plan remains in operation and effect.
The material facts are not disputed and the questions presented for decision are questions of law.
There are conflicting decisions of appellate courts in different jurisdictions with various results with respect to the rights of beneficiaries under numerous pension or retirement systems. Where the statute provides for the administration and alteration in the accrual and payment of benefits it, of course, regulates and controls such matters; but when the statute or instrument which creates the plan does not provide for such matters difficulty and uncertainty result in the administration of the plan.
Pension systems established by statutes or other enactments applicable to public employees consist of two general classes: (1) Those which require employee contribution to the pension fund and (2) those which do not require such contribution. The first general class may also be divided into systems in which the contributions by employees are compulsory and those in which the contributions are voluntary. The supplemental pension or retirement plan here under consideration is a noncontributory pension or retirement system. The plaintiffs as employees of the defendant contribute nothing to the pension or retirement plan and the fund from which the benefits under it are paid is created by and results from taxes realized from levies by the board of education.
The general rule, supported by the clear weight of authority, is that a pension granted by a public authority is not a contractual obligation but is a gratuitous allowance, in the continuance of which the *154 pensioner has no vested right, and accordingly, the pension is terminable or alterable at the will of the grantor. Densmore v. County Court of Mercer County, 106 W. Va. 317, 145 S.E. 641; Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Frisbie v. United States, 157 U.S. 160, 15 S.Ct. 586, 39 L.Ed. 657; Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426; United States v. Teller, 107 U.S. 64, 2 S.Ct. 39, 27 L.Ed. 352; MacFarland v. Bieber, 32 App.D.C. 513; Raines v. Board of Trustees of Illinois State Teachers' Pension and Retirement Fund, 365 Ill. 610, 7 N.E.2d 489; Dodge v. Board of Education of City of Chicago, 364 Ill. 547, 5 N.E.2d 84, affirmed, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57; People ex rel. Donovan v. Retirement Board of Policemen's Annuity and Benefit Fund, 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 940; State ex rel. Parker v. Board of Education of City of Topeka, 155 Kan. 754, 129 P.2d 265; Foley v. City of Springfield, 328 Mass. 59, 102 N.E.2d 89; Brown v. City of Highland Park, 320 Mich. 108, 30 N.W.2d 798; Gibbs v. Minneapolis Fire Department Relief Association, 125 Minn. 174, 145 N.W. 1075, 37 Ann. Cas.1915C, 749; State ex rel Phillip v. Public School Retirement System of City of Saint Louis, 364 Mo. 395, 262 S.W.2d 569; McFeely v. Pension Commission of City of Hoboken, 8 N.J.Super. 575, 73 A.2d 757; Laden v. Daly, 132 N.J.L. 440, 40 A.2d 780, affirmed, 133 N.J.L. 314, 44 A.2d 212; Moran v. Firemen's and Policemen's Pension Fund Commission of Jersey City, 20 N.J. Misc. 479, 28 A.2d 885; Dillon v. Wentz, 227 N.C. 117, 41 S.E.2d 202; City of Dallas v. Trammell, 129 Tex. 150, 101 S.W. 2d 1009, 112 A.L.R. 997; In re Snyder, 93 Wash. 59, 160 P. 12, 3 A.L.R. 1230, affirmed, 248 U.S. 539, 39 S.Ct. 67, 63 L.Ed. 410.
In 40 Am.Jur., Pensions, Section 24, the text contains this language: "The unquestioned general rule is that a pension granted by the public authorities is not a contractual obligation but a gratuitous allowance, in the continuance of which the pensioner has no vested right, and that a pension is accordingly terminable at the will of the grantor, either in whole or in part. And since there is no contract on the part of the state to continue the payment of a benefit or annuity, a change in the law affecting such benefit or annuity does not impair the obligation of a contract or deprive the pensioner of property within the constitutional meaning." The text of that section also contains this language: "And it is a strongly supported rule that where any particular payment under a pension has become due, the pensioner has a vested right thereto."
In Densmore v. County Court of Mercer County, 106 W.Va. 317, 145 S.E. 641, this Court in the opinion said that "It is the established rule that a pension, such as the one here, is a mere gratuity in which the pensioner has no vested legal right, and which is terminable without notice, at the will of the state." In People ex rel. Donovan v. Retirement Board of Policemen's Annuity and Benefit Fund, 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 940, cited in the Densmore case, the opinion contains this language: "As against the state or its political subdivisions, there is no vested right in a pension accruing in the future from month to month. Buetel v. Foreman, 288 Ill. 106, 123 N.E. 270; Gibbs v. Minneapolis Fire Department Relief Ass'n, 125 Minn. 174, 145 N.W. 1075, Ann.Cas.1915C, 749. A pension is a bounty springing from the appreciation and graciousness of the sovereign, and may be given or withheld at its pleasure. Eddy v. Morgan, 216 Ill. 437, 75 N.E. 174. There is no contract on the part of the state to continue the payment of a benefit or annuity, and a change in the law affecting such benefit or annuity does not impair the obligation of a contract or deprive a person of property without due process of law within the meaning of the constitutional provisions invoked. Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426; Pecoy v. City of Chicago, 265 Ill. 78, 102 [106] N.E. 435."
*155 In Brown v. City of Highland Park, 320 Mich. 108, 30 N.W.2d 798, the court said that a pension granted by public authorities is not a contractual obligation, that the pensioner has no vested right, and that a pension is terminable at the will of a municipality, at least while acting within reasonable limits, and that a pensioner has only an expectancy based upon the continuance of an existing municipal charter.
What has been characterized as a widely recognized and established exception to the foregoing general rule, however, is that when any particular payment under a pension plan has become due, the pensioner has a vested right to the payment that is due as provided by the plan. Bender v. Anglin, 207 Ga. 108, 60 S.E.2d 756, certiorari denied, 340 U.S. 878, 71 S.Ct. 125, 95 L.Ed. 638; Dillon v. Wentz, 227 N.C. 117, 41 S.E. 2d 202; Moran v. Firemen's and Policemen's Pension Fund Commission of Jersey City, 20 N.J.Misc. 479, 28 A.2d 885.
In Bender v. Anglin, 207 Ga. 108, 60 S.E.2d 756, certiorari denied, 340 U.S. 878, 71 S.Ct. 125, 95 L.Ed. 638, in which it was held that an amendment purporting to reduce benefits provided by a pension act violated the constitutional provision prohibiting the impairment of the obligation of a contract and was void as to a fireman who was in service and had contributed to the pension fund prior to the adoption of the amendment, the pension plan there under consideration being different from the plan now before this Court, the court, discussing the difference between a contributory and a noncontributory pension plan, after quoting the general rule stated in 40 Am.Jur., Pensions, Section 24, said: "This general rule is applicable to gratuities as distinguished from grants for a consideration. It controls in those cases where the laws providing therefor are so construed as to hold that the pensioner pays no consideration for the grant received under such plan. Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426; Frisbie v. United States, 157 U.S. 160, 15 S.Ct. 586, 39 L.Ed. 657; Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434. See also People ex rel. Donovan v. Retirement Bd. P. A. & B. F., 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 943; City of Dallas v. Trammell, 129 Tex. 150, 101 S.W.2d 1009, 112 A.L.R. 1009. It would be an unjustified distortion of this general rule to apply it in cases where the laws providing for retirement and disability compensation are construed to require the recipients of such benefits to make valuable contributions as consideration for the benefits to be received.
"There is an exception to the general rule denying any vested right in gratuitous pensions, which is: where any particular payment under a pension plan has become due, the pensioner has a vested right to such due payment. 54 A.L.R. 945; 112 A.L.R. 1010. It is well at this point to emphasize that this exception applies to payments that have accrued and to them only, and it does not purport to confer vested rights to future payments that have not accrued, which would constitute a violation of the general rule above quoted. But if the pension law is still in effect when a payment under terms of that law becomes due the pensioner, he thereby acquires a vested right in such payment because it accrues to him under a law then in effect and not because of any consideration flowing from the pensioner that binds the government to pay him anything. This could not be said of future payments that have never accrued when the law is amended or repealed."
It has been stated that in all jurisdictions in which the point has been judicially considered it has been held that where, by the terms of any public employees' pension statute a particular pension payment has become due and payable, the pensioner's right to that payment is vested and can not be adversely affected by subsequent legislation. 52 A.L.R.2d 442, footnote 12.
It has been said that money paid to retiring employees under pension systems is provided in the belief upon the part of the pension authorities that more efficient *156 service is rendered and that the long, continuous services necessary to bring employees within the provisions of the system justify the payment of a pension as an economic proposition. Bowler v. Nagel, 228 Mich. 434, 200 N.W. 258, 37 A.L.R. 1154; Brown v. City of Highland Park, 320 Mich. 108, 30 N.W.2d 798. It has also been said that an avowed purpose of the creation of a teachers' pension or retirement system is to improve the educational system by obtaining better compensation for teachers and rewarding them for faithful and continuous services and to make the profession more attractive to qualified persons. Driggs v. Utah State Teachers Retirement Board, 105 Utah 417, 142 P.2d 657. Such purpose is a public purpose and warrants the expenditure of public funds for the payment of the benefits provided by a pension or retirement system.
There are decisions of appellate courts in several jurisdictions to the effect that the right of a pensioner under a plan or system which provides for contributions to the fund by the pensioner vests at the time of his retirement and when all the conditions entitling him to a pension have been fulfilled and that the benefits provided by such plan may not be diminished or otherwise affected by subsequent legislation unless such right is reserved to the pension authority by statute or other enactment by which the plan or system is created. See O'Dea v. Cook, 176 Cal. 659, 169 P. 366; State ex rel. Stringer v. Lee, 147 Fla. 37, 2 So.2d 127; Bender v. Anglin, 207 Ga. 108, 60 S.E.2d 756, certiorari denied, 340 U.S. 878, 71 S.Ct. 125, 95 L.Ed. 638; Raines v. Board of Trustees of Illinois State Teachers' Pension and Retirement Fund, 365 Ill. 610, 7 N.E.2d 489; Klamm v. State ex rel. Carlson, 235 Ind. 289, 126 N.E.2d 487; Stevens v. Minneapolis Fire Department Relief Association, 124 Minn. 381, 145 N.W. 35, 50 L.R.A.N.S., 1018; Clarke v. Ireland, 122 Mont. 191, 199 P.2d 965; State ex rel. Phillip v. Public School Retirement System of City of St. Louis, 364 Mo. 395, 262 S.W.2d 569; Hickey v. Pittsburgh Pension Board, 378 Pa. 300, 106 A.2d 233, 52 A.L.R.2d 430; Driggs v. Utah State Teachers Retirement Board, 105 Utah 417, 142 P.2d 657; State ex rel. Teweles v. Public School Teachers' Annuity and Retirement Fund Trustees of the City of Milwaukee, 235 Wis. 385, 291 N.W. 775.
The foregoing decisions, however, are based on the theory that a contract exists between the pensioner and the pension authority which can not be impaired by subsequent legislation and as those decisions apply only to a contributory pension plan or system and not to a noncontributory plan or system they are distinguishable and do not affect or control the decision in the case at bar.
Under the general rule previously stated which applies to a noncontributory pension or retirement plan, such as the plan here under consideration, and the exception to the general rule, though such plan may be abolished at the will of the pension authorities, as long as the plan continues in effect, a retired pensioner under a noncontributory plan has a vested right to a payment that has accrued and become due and payable and such vested right to such accrued payment can not be reduced, disturbed or impaired by any subsequent legislation; but such vested right does not attach to future payments that have not accrued and the character and the amount of such unaccrued future payment may be modified, changed, increased or reduced at any time by action of the pension authority which creates the pension or retirement plan or system in changing or modifying it to accomplish any such result.
Though there is a trend toward the adoption of an opposite view in some jurisdictions this Court is not disposed to depart from the foregoing well established and widely recognized general rule and the exception to the rule.
*157 It should be noted that there is a valid distinction between a vested right to a pension and a vested right to the amount of the benefit or payment provided by the plan. See discussion of this point in the opinion of the court in City of Dallas v. Trammell, 129 Tex. 150, 101 S.W.2d 1009, 112 A.L.R. 997. When, but only when, he performs all the conditions and satisfies all the requirements of the statute which creates a pension or retirement plan or system does a pensioner have a vested right to a pension. See State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, 148 W.Va. 369, 135 S.E.2d 262. That a pensioner has a vested right to a pension, however, does not mean that he has a vested right to any specific sum or payment from the fund. Whether he does or does not have a vested right to a specific sum or payment which can not be changed or diminished depends upon the provisions of the enactment which creates the plan or system and whether it is a contributory or noncontributory plan or system. Many cases in different jurisdictions hold that a voluntary contributory plan or system is a contractual obligation and that the pensioner has a vested right to the payments in effect when the pension becomes effective which can not be changed or diminished by subsequent legislation, although there is some conflict in the decisions in the different jurisdictions. On the contrary, according to the clear weight of authority, a pensioner in a noncontributory pension or retirement plan or system, as here, has a vested right only to payments which have accrued and which can not be changed or diminished but does not have a vested right to future payments which may be changed or diminished in amount at any time.
As it appears that all the plaintiffs, except the plaintiff Agnes Patterson, were entitled to the payments which had accrued before and until July 1, 1959, that none of the plaintiffs is entitled to any payment from the supplemental fund accruing after July 1, 1959 at the rate in effect prior to that date, that the payments accruing until July 1, 1959 to which the plaintiffs E. W. Taylor, E. A. Hyldoft and Irvin L. Siebert were entitled have been paid, and that the judgment in favor of each of the plaintiffs embraces payments accruing after July 1, 1959 until June 30, 1963 at the rate in effect before July 1, 1959, each of those judgments should be and it is reversed and set aside; and this action is remanded to the circuit court with directions that it ascertain and determine the amounts, if any, which each of the plaintiffs is entitled to receive from the supplemental pension fund accruing to July 1, 1959 at the rate in effect until that date or under the formula in effect after July 1, 1959, or both, subject to credit for any amounts that have been paid to any of the plaintiffs as shown by the record in this action.
Reversed and remanded with directions.